# City of Mobile v. Louisville & Nashville Railroad Company.

*Bill by City Against Railroad Company to Open Certain Streets.*

1. *Limitation of authority of city over its streets.*—In the absence of legislative grant, a city has no power or authority by contract or ordinance to confer upon individuals or corporations the right to obstruct its streets and public highways, or to grant franchises and privileges in the same that tend to impair the public use for which they were dedicated or intended.

2. *Same; grants to municipal corporations construed strictly.*—In a legislative grant of powers to corporations, such as are not expressly or by clearest implication granted, are taken to be withheld. And unless the power be clearly and unequivocally expressed in the charter or conferred by statute, a municipal corporation cannot authorize a use of its public highways by persons or corporations in a manner that will interfere with the use thereof by the general public; a *fortiori* may not such corporation authorize the total obstruction of its streets by the erection of buildings therein, or the inclosure of the same. It seems to be a cardinal rule of construction of legislative grants of franchises or powers to persons or corporations to construe the grant strictly in favor of the sovereign and against the grantee.

3. *Constitution; section 2, Art. IV of Constitution of 1865 construed.*—Section 2 of Art. IV of the Constitution of 1865, which provides that each law shall embrace one subject which shall be described in the title, is mandatory; and an act of the legislature passed under that constitution, which contains two subjects, or which, after providing for certain definite legislation, contains sections not connected with that subject which would never be suggested to the legislative mind from reading the caption or hearing it read, is void.

4. *Act of legislature construed.*—An act of the legislature which places the wharves of a city in the hands of trustees to lease the same for the benefit of the bondholders named in the act, does not prevent the city having authority under its charter from filing its bill to remove obstructions from the streets down to the wharf line, if no further.

5. Whether the legislature has power to authorize the obstruction of the public streets of an incorporated city or town, query.

6. *Private act of legislature must be pleaded.*—A local and private act of the legislature in order to be considered by the court for any purpose, must be brought before the court by proper pleading; it is not an act that the court can take judicial notice of.

APPEAL from Mobile Chancery Court.
Heard before Hon. W. H. TAYLOE.
The facts of this case are stated in the opinion.

B. B. BOONE, for appellant.—(1). A municipal cor poration cannot give a valid permission to any one to oc- cupy the streets or sidewalks with continuing erections, or other obstructions, without express power conferred by statute in clear and unequivocal terms.—*U. S. v. Fisher*, 2 Cranch 390; *Commonwealth v. Rush*, 14 Pa. 193; *Cushing v. Boston*, 128 Mass. 330; *Daly v. Ga. So. R. R. Co.*, 12 Am. State Rpts. 288; *Seifert v. Brookly*, 101 N. Y. 136; *Morse v. Norcester*, 139 Mass. 389; *Rail- road Co. v. Bingham*, 87 Tenn. 528; *Birmingham Street Railroad Cases*, 79 Ala. 472; *Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 121. (2). Grants of power to municipali- ties must be strictly construed.—*Minturn v. Larne*, 23 Howard 436; *Railroad Co. v. Canal Com'r*, 21 Penn. St. 22; *Bridge v. Bridge*, 11 Peters 420;Dillon on Municipal Cor., 3 ed., p. 118; *Porter v. Railroad Co.*, 64 Mo. 158. (3). The act entitled "An act to amend sections 16 and 22 of an act to incorporate the New Orleans, Mobile & Chattanooga Railroad Company," approved November 24, 1866, and to add additional sections thereto," is un- constitutional.—*Ex parte Cowert*, 92 Ala. 100; *Woolf v. Taylor*, 98 Ala. 254; *Ex parte Gayles*, 108 Ala. 514; Cooley on Con. Lim., 5 ed., p. 174. (4). Section 33 of an act approved February 24, 1881, does not preclude the complainant from maintaining this bill.—*Webb. v. City of Demopolis*, 95 Ala. 131; 3 Dillon Munic. Cor.; 2 ed., § 297; *People v. Lambier*, 5 Denio 9.

GREGORY L. SMITH, *contra.*—The amendatory act of Nov. 24, 1866, does not violate the constitution. Had section 5, which, it is contended, is not embraced in the

title, been embraced in the original act chartering the company it would have been part of the general subject matter of the act, sufficiently expressed in the title, and would have complied with the constitution.—*The State ex rel. Rogers,* 107 Ala. 451; *Ex parte Pollard,* 40 Ala. 95; *Lockhard v. City of Troy,* 48 Ala. 479. (2). The test is not whether treating the act as an independent act it contains more than one subject and whether that subject is clearly expressed in the title, but whether treating it as a part of the original act does it add an additional subject matter to that act and is the subject of the act clearly expressed in the title.—*Underwood v. Mc-Duffee,* 15 Mich. 566; *Roby Mayor v. Shepard,* 26 S. E. 279; *Commonwealth v. Brown,* 21 S. E. 360; *State ex rel. Watson v. Algood,* 10 S. W. 310. (3). The legislature can authorize a city to grant away or abandon a street in so far as the public use thereof is concerned.—*Perry v. New Orleans M. & C. R. R. Co.,* 55 Ala. 420; 2 Dillon § 66. (4). And as the city of Mobile had legislative authority to grant the use of the streets to the railroad, the occupancy for twenty years would raise a presumption of an ordinance granting the right even if no such ordinance could have been produced.—*Matthews v. McDade,* 72 Ala. 389; *Semple v. Glenn,* 91 Ala. 260.

DOWDELL, J.—The bill in this case is filed by the city of Mobile, a municipal corporation under the laws of Alabama, against the Louisville & Nashville Railroad Company, a corporation chartered under the laws of Kentucky and doing a railroad business in the State of Alabama and in the city of Mobile, as successor to the rights of the New Orleans, Mobile & Chattanooga Railroad Company, a corporation chartered by the State of Alabama. It is averred in the bill that the complainant is the successor to the rights of the town and city of Mobile, in regard to public streets, as derived from its foundation by the French in 1711, through the English and Spanish regimes and the American occupation in 1814, down to the present time, under various and sundry corporate names. It is charged that among such rights, there was invested in the inhabitants, or sovereign in trust for them, the ownership of the streets and

full right of access to the shores and waters of the Mobile River; that public maps, whether French, English, Spanish or American, recognized and showed such dedication of the shores to the public, and the East and West streets down to the channel, as in use at the respective times. It is charged in particular that what are now called Government, George, Charleston, Savannah and Augusta streets are and long have been public streets, and were, until recently, open and publicly used to tidewater, and are so shown on all early public maps. Government and Church streets were parts of the esplanade of the fort founded by the French, existing under different names until 1812, and at the eastern or river end fully dedicated and used for landing and street purposes during that period; that Charleston, Savannah and Augusta streets were dedicated and accepted under their names between 1830 and 1837; that the original shore line was at or near the present Water street, but it is alleged that early in American times and largely before 1836 the city front was advanced out eastwardly, to and beyond Commerce street from at least St. Louis street on the north to Monroe street on the south, and later the city was built out further south, the streets being built out in ratio by the municipal authorities and laid down on the said maps. Copies of said maps were attached as exhibits to the bill. All of said streets named in the bill and exhibits, it is charged, were used by the public, for many years prior to 1869, and were recognized as public streets to the water's edge; that to the river front is and has always been due the commercial importance of Mobile. It is further alleged and charged that in or about 1866 to 1871, the New Orleans, Mobile & Chattanooga Railroad Company was projected and built through Mobile to the southwest, and its projectors obtained, or pretended to obtain certain alleged franchises from the then existing municipal authorities, especially in 1870, the alleged right to enclose a tract extending east of Commerce street to the river, and running from a line 100 feet south of the north side of Government street southwardly almost to Monroe street, as it had, also in 1869, pretended to obtain the alleged right to enclose from Charleston street south to Elmira and

extending from Royal street to the river. Acting there-under or otherwise said Railroad Company enclosed a portion of Government street and all of Church street east of Commerce street, and also Augusta and Savannah streets from Royal street to the Mobile river, building on much of the land depots and shops; but it is charged in the bill that said municipal authorities had no constitutional right to make such pretended grant or grants and that such action was illegal and *ultra vires*. It is shown that the defendant has succeeded to such enclosures and purprestures and is in the use or enjoyment thereof, except the east half of Water street between Charleston and Elmira, which was surrendered to the city by agreement in 1880, and still claims to own the same. It is also shown by the bill that tidewater formerly came up to Water street at what is now its intersection with Charleston street, and that as the land was reclaimed east of Water street, the said Charleston street was extended also eastwardly by public use and the maps; that recently, within three years past, the defendant enclosed Charleston street east of Water street, and by itself or tenants erected buildings thereon without authority and maintains the same. It is also charged that the use of the portions of Government and George streets east of Commerce street, and of Charleston street east of Water street, and of Augusta and Savannah streets between Royal and Water streets, denies them to the public, and is an unlawful appropriation of public property to private use, and constitutes a nuisance, affecting complainant and the public. It is also shown that it amounts to depriving the public of the river end of at least five important streets and the appropriation of them to one corporation; that if only the trustee for the bondholders, under the act of Feb. 24th, 1881 (SessionActs 1880-1, p. 402), can act as to wharf property, which is not conceded, complainant avers that it is notwithstanding injured at least out to where the wharf line begins, and that such appropriation is a nuisance and should be abated. The special prayer of the bill is to perpetually enjoin the defendant from obstructing Government street to the east of Commerce street and north of the south line of Government street con-

tinued from Water street to the Mobile river; from ob-
structing Church street east of Commerce street,
Charleston street east of Water street, and Augusta and
Savannah streets between Royal and the river, and to
compel the defendant to remove all obstructions from
such public streets. There is also prayer for general re-
lief.

The defendant answered the bill and also filed pleas
thereto, in which it alleged its right and authority to
obstruct all the streets named in the bill except Charles-
ton street, by virtue of section five of the amended char-
ter of the New Orleans, Mobile & Chattanooga Railroad
Company, approved February 12th, 1867, and by virtue
of certain ordinances adopted pursuant to said section
five of the amended charter by the mayor and aldermen
and common council in September, 1869, and December,
1870. As to where the said streets named in the bill end
at Mobile river, the defendant pleads the act of the gen-
eral assembly of Alabama, approved February 24th,
1881 (Session Acts 1880-1, p. 402), entitled "An act to
amend sections 2, 5, 8, 10, 13, 14, 20, 24, 28, 33, of 'an act
to adopt and carry into effect the plan for the adjust-
ment and settlement of the existing indebtedness of the
late corporation known as the mayor and aldermen and
common council of the city of Mobile, which is recom-
mended in the report of the commissioners of Mobile
made and laid before the general assembly of Alabama
on the 26th of November, 1880, as provided in section 16
of an act of the general assembly of Alabama, entitled
"An act to vacate and annul the charter and dissolve the
corporation of the city of Mobile, and to provide for the
application of the assets thereof in discharge of the
debts of said corporation," approved Feb. 11th, 1879,'"
approved December 8th, 1880, as a bar to the right of
the city of Mobile to have obstructions removed from
said streets where they end at the river or wharf fronts.

The cause was set down for hearing in the chancery
court on the sufficiency of the defendant's pleas, (1), as
to whether the general assembly of Alabama authorized
the obstruction of the streets or public highways named
in the bill, or delegated the power to the city of Mobile to
authorize the obstruction of said streets as charged in

the bill of complaint; (2), as to whether the city of Mobile by its mayor, aldermen or common council had the power or authority to authorize the New Orleans, Mobile & Chattanooga R. R. Co. to occupy and obstruct the streets or public highways, as charged and named in the said bill of complaint; and, (3), whether the act of the general assembly of February 24th, 1881, inhibits the city of Mobile from causing obstructions to be removed from such of its streets as were opened down to the Mobile river, or precludes the city of Mobile from having said streets opened to public use and travel, as prayed in the bill of complaint.

On Jan. 21st, 1898, the chancery court made and had entered a decree, wherein it was "considered, ordered, adjudged and decreed that said pleas are each sufficient, and that as such they be allowed." This decree of the court is now assigned as error.

The sufficiency of defendant's pleas as a defense to complainant's bill is based upon section five of the amended charter of the New Orleans, Mobile & Chatta nooga Railroad Co., approved February 12th, 1867, and the several ordinances adopted pursuant to said section five of said amended charter by the mayor, aldermen and common council of the city of Mobile, in September, 1869, and December, 1870. The said section five and several ordinances so pleaded are set out in full in the pleas.

Any right or franchise to the use of the streets of a city for railroad purposes must depend upon legislative sanction and authority. The law is too well settled to admit of question that in the absence of legislative grant, a city has no power or authority by contract or ordinance to confer upon individuals or corporations the right to obstruct its streets and public highways, or to grant franchises and privileges in the same that tend to impair the public uses for which they were dedicated and intended. Mr. Freeman says, in an elaborate note to *Callaven v. Gilenon*, 1 Am. St. Rep. 840: "The public have a right to passage over a street to its utmost extent, unobstructed by any impediments, and any unauthorized obstruction which necessarily impedes the lawful use of a highway is a public nuisance at common law."

In *State v. Edens*, 85 N. C. 526, Judge Ruffin said: "Any permanent obstruction to a public highway, such as would be caused by the erection of a fence or a building, is of itself a nuisance, though it should not operate as an actual obstacle to travel, or work positive inconvenience to any one. It is an encroachment upon a public right, and as such is not permitted by the law to be done with impunity."

In *Daly v. Ga. So. R'y Co.*, 12 Am. St. Rep. 286, it is said: "The king cannot license the erection or commission of a nuisance; nor in this country can a municipal corporation do so by virtue of any implied or general powers. A building or other structure of like nature erected upon a street without the sanction of the legislature, is a nuisance, and the local corporate authorities of the place cannot give a valid permission thus to occupy streets without express power to this end conferred upon them by charter or statute."—Dillon on Munic. Corporations, § 660.

And so we might continue to multiply quotations with citations of authorities, but it is wholly unnecessary, for this principle is well supported by our own adjudications.—*Birmingham St. R. R. Cases*, 79 Ala. 472; *Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 121; *Costello v. The State*, 108 Ala. 49.

The doctrine is also well established that in a legislative grant of powers to corporations, such as are not expressly or by clearest implication granted, are taken to be withheld. And unless the power be clearly and unequivocally expressed in the charter or conferred by statute, a municipal corporation cannot authorize a use of its public highways by persons or corporations in a manner that will interfere with the uses thereof by the general public; *a fortiori*, may not such corporation authorize the total obstruction of its streets by the erection of buildings therein, or the enclosure of the same. It seems to be a cardinal rule of construction of legislative grants of franchises or powers to persons or corporations, to construe the grant strictly in favor of the sovereign and against the grantee. "Grants of power to corporations, unlike the grants of individuals, are to be strictly construed in favor of the government and

against the grantee. Corporations can claim nothing that is not clearly given. Ambiguities operate against them. 'In the construction of every charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation.' "—*Grand Lodge of Ala. v. Waddill*, 36 Ala. 318; *Penn. R. R. Co. v. Canal Com'rs*, 21 Penn. 9; *Richmond R. R. Co. v. Louisa R. R. Co.*, 18 Howard 81; Sedgwick on Stat. Const. Law, 338-342.

But it is unnecessary to pursue further this line of argument. It was decided by this court in the case of the *Port of Mobile v. L. & N. R. R. Co., supra*, that the city of Mobile had no power or authority under its charter to grant a right or franchise of its streets for railroad purposes. And the charter passed on in that case was the existing charter at the time of the adoption of the city ordinances set up in the defendant's pleas. The right of the defendant, then, to continue the obstructions complained of in the bill must rest upon the authority granted under the ordinances set forth in the pleas, and these ordinances adopted by the municipal government of the city of Mobile must in turn rest their validity upon the grant of power to the city contained in section five of the amendatory act of Feb. 12th, 1867, entitled "An act to amend sections 16 and 22 of an act entitled 'an act to incorporate the New Orleans, Mobile and Chattanooga Railroad Co.,' approved November 24th, 1866, and to add additional sections thereto." The caption of this act reads as follows: "To amend sections sixteen and twenty-two of an act entitled an act 'to incorporate the New Orleans, Mobile and Chattanooga Railroad Company,' approved November 24th, 1866, and add additional sections thereto." Section five is one of the additional sections that is added, and reads as follows: Section 5. Be it further enacted that the said company is hereby authorized and empowered to obtain by grant or otherwise from any incorporated city or village within this State that may be situated upon or at the intersection or termini of any of its railroads, any rights, privileges or franchises that any of said incorporated cities or villages may choose to grant, in reference to the construction, maintenance and management of the railroad

of said company, its depots, cars, locomotives, and its business, within the limits of such or any of such incorporated cities or villages, and any such incorporated city or village as hereinbefore named is hereby authorized and empowered to grant to said company any · such rights, privileges and franchises as it may deem proper and advisable; and such rights, privileges and franchises, when granted to and accepted by said company from any such incorporated city or village, shall be deemed and taken as rights, privileges and franchises vested and confirmed in said company, and not liable thereafter to be revoked, changed, injured or impaired, except with the consent of said company."

It is now insisted by the appellant that this section is unconstitutional, as being offensive to and violative of section two, article four, of the constitution of 1865, the constitution of force at the date of the passage of the act, and which provides: "Each law shall embrace but one subject, which shall be described in the title," etc. If this contention be well founded, it must follow that the ordinances adopted by the city pursuant to this act, granting the rights, privileges and franchises claimed by the defendant, are null and void, and the sufficiency of the plea setting up the same must be determined adversely to the defendant.

While the provision of the constitution under consideration is mandatory, still the courts should be certain that the statute is violative of the provision before proceeding to adjudge a solemn enactment of the law-making power of the State unconstitutional, but when the subject is relieved of doubt, then there should be no hesitancy on the part of the judiciary to exercise the function and duty of declaring a given law unconstitutional, however injurious may be the consequences to the individual litigant.

The present case bears a striking analogy to the case of *The State v. Southern Railway Co.*, 115 Ala. 250. There the caption of the act construed was, "to amend sections 8 and 10 of an act to create the Board of Education of the City of Birmingham, and to prescribe the powers and duties of the same." Here the caption is: "to amend sections 16 and 22 of an act entitled 'an act

to incorporate the New Orleans, Mobile and Chatta-
nooga Railroad Company;' approved November 24th,
1866, and add additional sections thereto." In the
former case, as stated by the court, "the only purpose of
the amendatory act as stated in its title was to amend
two sections named of the former enactment. They were
amended so as to be made to read in the words and fig-
ures set out in the amendatory act, each amendment be-
ing round and complete within itself * * * * After
this, by independent legislation, the act proceeds to levy
a tax * * * * for purposes of the promotion of public
education within its limits—a subject not referable and
cognate to the subject expressed in the title, and which
would never be suggested to the legislative mind from
reading or hearing the caption read." So, in the case at
bar, the only purpose of the act under consideration, as
expressed in its caption, was to amend certain sections
of the original act incorporating the New Orleans, Mo-
bile and Chattanooga Railroad Co., and having accom-
plished this, the act proceeds, by way of independent leg-
islation, in section five, above set out, to confer upon the
incorporated cities and towns along the proposed line of
railroad named in the act the power and authority to
grant to said company rights, privileges and franchises
of the public streets and highways of such incorporated
cities and towns; or, in other words, and in effect, to so
radically amend the charter of the city of Mobile as to
authorize said city to grant to defendant corporation the
right to exclusively occupy its streets—a subject not
only not cognate and germane to the subject expressed
in the caption to the act, but wholly foreign to it. If it
be conceded that the subject contained in the title to the
amendatory act, is the subject of the original act, which
is sought to be amended, that is, the incorporation of
the New Orleans, Mobile & Chattanooga Railroad Co.,
even then the matter expressed in section five, conferring
grants of power on incorporated towns and cities, could
not be referable and cognate to the subject expressed in
the caption, so as to relieve it of its offensiveness to the
constitutional provision. To the legislative mind, or to
the public, upon reading the title of the act in question
there is not the slightest hint or suggestion to be had of

an intention or purpose to amend, alter or change the chartered powers of the cities and villages along the line or at the termini of the railroad of the company incorporated by the act. What was said by this court in the case of the *State v. Southern Railway Co., supra,* is so opposite that we here repeat it: "The provision is so violative of section 2, article IV, of the Constitution, requiring that each law shall contain but one subject, which shall be clearly expressed in the title, we need indulge no argument to show it. Adjudications are abundant and pointed in condemnation of such legislation. We content ourselves with reference to cases on the subject in which others will also be found cited." *Ballentyne v. Wickersham,* 75 Ala. 533; *Ex parte Reynolds,* 87 Ala. 138; *Ex parte Cowart,* 92 Ala. 94; *Wolff v. Taylor,* 98 Ala. 254; *Ex parte Gayles,* 108 Ala. 514.

When the ordinances and the act incorporating the New Orleans, Mobile and Chattanooga Railroad Co., which we have been considering, were under consideration in the case of the *Port of Mobile v. L. & N. R. R. Co., supra,* this question was not then raised, presented to or considered by the court.

Section 33 of the act approved Feb. 24th, 1881, which said act is pleaded by the defendant against the complainant to maintain its bill for the removal of obstructions from the river end of certain streets named in the bill, contains the only reference in said act to the wharves of the city. The charter of the city of Mobile in force and effect when the bill in this case was filed (Session Acts 1896-7, pp. 542-581, § 21), makes it the duty of the general council, "to cause to be removed all nuisances that may exist, or things likely to become such, from the streets, roads, sidewalks, alleys, or places, in the aforesaid limits." The limits of said city as shown in section one of said charter embrace all of Mobile river opposite the city. Suppose the wharves were in the possession of a trustee under the act of Feb. 24th, 1881, for the purpose of leasing same for the benefit of the bondholders named in the statute, how could this prevent the city, under the above charter authority and duty, from filing its bill to remove obstructions from the street down to the wharf line, if no further? We fail to see that there is any merit in the defense set up in this plea.

[Fidelity & Deposit Co. v. Mobile County.]

In the foregoing opinion we have assumed the power of the legislature to authorize the obstruction of the pub lic streets of an incorporated city or town, without deciding that question.

Our conclusion is that the chancery court erred in adjudging the pleas sufficient.

Our attention has been called by counsel for the appellee to a recent act of the legislature passed at the last session (Session of 1898-9), entitled, "An act to validate the grants, rights, privileges and franchises granted to railroads by the city of Mobile and its predecessors." This act is local and private, and in order to be considered by the court for any purpose must be brought before the court by proper pleading. It is not an act that the court can take judicial notice of.

As the decree of the chancery court must be reversed for the error pointed out, in accordance with the suggestion of counsel on both sides, no decree will be rendered by this court, but the cause will be remanded.