# Mobile Dry Docks Co., *et al.*, *v*. The City of Mobile.

# Richard H. Clark *v*. City of Mobile.

# Constantine L. Lavretta *v*. City of Mobile.

# F. S. Cleveland, *et al.*, *v*. City of Mobile.

# Ollinger & Bruce Dry Dock Co., *v*. City of Mobile.

# Katherine O. Bancroft *v*. City of Mobile.


*Ejectment.*

(Decided Feb. 6, 1906.  40 So. Rep. 205.)

1. *Ejectment; Burden of Proof.*—A plaintiff in ejectment must recover upon the strength of his own title, and until he has made out a *prima facie* case the defendant is not required to offer any evidence.

2. *Constitutional Law; Statutes; Presumptions.*—The presumption is always indulged that a statute is constitutional, and it will not be declared otherwise unless no doubt exists of its unconstitutionality.

3.  *Statutes: Constitutional Requirements; Title of.*—The act entitled an act granting to the city of Mobile the riparian rights to the river front (Acts 1866-67, p. 307), but the body of which grants to the city of Mobile the shore and soil under the Mobile River within the city limits, is violative of Sec. 2, Art. 4, Constitution of 1865, and similar provisions of subsequent constitutions. (TYSON, J., dissents.)

APPEAL from Mobile Circuit Court.

Heard before HON. SAMUEL B. BROWNE.

The city of Mobile, a municipal corporation, brought a seperate action of ejectment against each of the appellants named above, and had judgment for the part of the lands occupied by the several appellants. As the same question is involved in each case only one opinion was written and made applicable to each case. The facts sufficiently appear in the opinion.

E. L. RUSSELL, B. B. BOONE and J. E. HAMILTON, for appellants, Mobile Dry Docks Co.

R. H. and N. R. CLARKE, for appellants, R. H. Clarke and C. L. Lavretta.

L. H. & E. W. FAITH, for appellants, Ollinger & Bruce Dry Docks Co., Katherine O. Bancroft, and F. S. Cleveland.—The act dissolving the municipality of the city of Mobile, approved Jan. 31st, 1867, and the act approved Feb. 11, 1879, reverted the interest held in trust by the city to the State of Alabama.—*Mt. Pleasants v. Beckwith*, 100 U. S. 530; *Amy N Co. v. Selma*, 77 Ala. 125; *Meriwcather v. Garrett*, 102 U. S. 501. It is perfectly plain that under the act creating the Mobile river commission and the act amendatory thereof, that all the power which was conferred upon the mayor and aldermen of the city of Mobile by the terms of the act of Jan. 31st, 1867, was also conferred upon the Mobile river commission. It is undoubtedly true that the state had the power to change the trustee of the shore and soil of the river possessed, managed and controlled for the public good.—*Mt. Hope Cemetery v. Boston*, 35 Am. St. Rep. 517; *Weymouth, etc., v. County Commissioners*, 108 Mass.

142; *Meriweather v. Garrett,* 102 U. S. 472; 146 U. S. 387. And it has been expressly held by this court and the supreme court of the United States that this act vested in the city of Mobile a public trust.—*Mobile Trans. Co. v. City of Mobile,* 128 Ala. 348; s. c. 187; U. S. 479. Besides all this, the act granting riparian right does not cover the bed and shore of Mobile river.—Century Dictionary; Webster's Inter. Dict. of 1905; Ency. and Americana, 1904, vol. 13. As to what have been defined to be riparian rights, the following cases are cited: *Deidrich v. N. W. U. Ry. Co.,* 42 Wis. 262; *Chapman v. O. & M. R. R. R. Co.,* 33 Wis. 629; *Lyons v. Fishmonger Co.,* L. R. 1, Appeal case 622; *Stevens Co. v. Reilly,* 44 Wis. 405; Gould on Waters, (3 Ed.) § 148; *McCullough v. Wainwright,* 14 Penn. St. 174; *Webber v. Harbor Commission,* 18 Wall 64; *McCarty v. Murphy,* 19 Wis. 159; *Potomac Co. v. Upper Potomac Co.,* 109 U. S. 672; *New England Club v. Mather,* 33 L. R. A. 569; 128 Ala. 273. The term riparian right does not comprehend the term shore and soil under Mobile river, and hence the act is unconstitutional in that its subject is not clearly expressed in its title.—*Boyd v. The State,* 63 Ala. 601; *Ex parte Cowart,* 92 Ala. 94; *Montgomery v. The State,* 88 Ala. 141; *Yerby v. Cochrane,* 101 Ala. 541; *Randolph v. Builders,* 106 Ala. 501; *Pierce v. Elmore County,* 117 Ala. 561.

GREGORY L. and H. T. SMITH, for appellee.—(Counsel discuss all the features of the case and cite numerous authorities.) The validity of the act of Jan. 31st, 1867, has been determined by this court, and the city of Mobile has the right to recover in ejectment regardless of the act of Dec. 6, 1896.—*Mobile Transportation Co. v. City of Mobile,* 128 Ala. 335. The general assembly had the right to pass this act.—*Nelson v. Manning,* 53 Ala. 549; *Watson v. Stone,* 40 Ala. 463; *Schicible v. Bacho,* 41 Ala. 432; *Horn v. Lockhart,* 17 Wall. 570; *Foust v. Chamblees,* 51 Ala. 79; *Riddle v. Hill's Admr.,* 51 Ala. 229; *Tarver v. Tankersley,* 51 Ala. 310; *Powell v. Young,* 51 Ala. 518; *Parks v. Caffey,* 52 Ala. 38; *Nelson v. Boynton,* 54 Ala. 347; *Hill v. Armistead, etc.,* 56 Ala. 118.

[Mobile Dry Docks Co., *et al.*, v. The City of Mobile.]

The state has the right to grant the title of the state to the city.—*Mobile Trans. Co. v. City of Mobile, supra,* s. c. 174 U. S. 479; *Turner v. City of Mobile,* 135 Ala. 73. The shore below common tide belongs to the public, though by grant it may become the property of the citizen.—Kent's Commentaries, page 347; *Mobile Trans. Co. v. City of Mobile,* 128 Ala. 335; s. c. 187 U. S. 479; *U. S. Mission Rock Co.* 189 U. S. 391; *Hoboken v. Penn. R. R. Co.,* 124 U S 690; *Shively v. Bowlby,* 152 U. S. 1; *Barney v. Keokuk,* 94 U. S. 321; *Hardin v. Jordan,* 140 U. S. 381; *Martin v. Weddell,* 16 Pet. 426; *Eisenbach v. Hatfield,* 26 Pac. (Wash.) 543; *Water Co. v. Water Co.,* 168 U. S. 357; *St. Louis v. Rutz,* 158 U. S. 250; *Pollard v. Hagan,* 3 How. 212; *City of Mobile v. Eslava,* 9 Port. 578; s.c. 16 Peters, 251; *Hagan v. Campbell,* 8 Port. 12; *Goodtile v. Ingersoll,* 17 Ala. 792; *State v. City of N. J.,* 25 N. J. L. 525; *Hardin v. Jordan,* 140 U. S. 381; *Kaukauna W. P. Co. v. Green Bay Canal Co.,* 142 U. S. 254

DOWDELL, J.—These suits are statutory actions in the nature of ejectment, brought by the city of Mobile to recover possession of the land particularly described in the several complaints, the same being the shore and the soil under the water of the Mobile river extending to the channel line of the river, or, in other words, land lying between the channel line and high water mark of the Mobile river. In each of the said causes, the general issue of "not guilty" was pleaded, and, on this issue the cause was tried.

It was not and is not denied, but on the contrary, admitted, that originally the title to the land sued for was in the state of Alabama and held by the state in trust for the public good under the compact by which the state of Alabama was admitted as a state into the union. The alleged title of the city of Mobile and upon which it bases its claim and right to a recovery of the land in question, is based upon an act of the legislature of the state of Alabama, by, and under which, it is asserted that the said land was granted by the state to the city of Mobile.

The rule of law is elementary and is nowhere more

plainly established than by the adjudication of this court, that in actions of ejectment, the plaintiff must recover, if at all, upon the strength of his title, and not upon the weakness of the title of his adversary, and, until the plaintiff has made a *prima facie* case by showing title sufficient upon which to base a right of recovery, the defendant is not required to offer evidence of his title.

The first question that is presented for our consideration is, whether the act of the legislature on which the city of Mobile bases its title and right of recovery is a valid act. The act, the validity of which is assailed on constitutional grounds, was approved January 31, 1867, and which we here set out in full including the title to said act. The title reads as follows: "An act granting to the city of Mobile the riparian rights to the river front." The body of the act is as follows: "Sec. 1. Be it enacted by the senate and house of representatives of the state of Alabama in general assembly convened that the shore and the soil under the Mobile river, situated within the boundary line of the city of Mobile, as defined and set forth in Sec. 2 of 'an act to incorporate the city of Mobile,' approved February 2, 1866, be and the same is hereby granted and delivered to the city of Mobile.

"Sec. 2. Be it further enacted that the mayor, aldermen, and common council of the city of Mobile be, and are hereby created and declared trustees to hold, possess, direct and control and manage the shore and soil herein granted in such manner as they may deem best for the public good. Approved Jan. 31, 1867."

The contention is that the act in question is void because offensive to and violative of Sec. 2, Art. IV of the constitution of 1865, which was of force at the date of said enactment and which provided that "each law shall embrace but one subject which shall be described in the title."

In entering upon the consideration and discussion of this question, we fully recognize the rule of construction that an act of the legislature should not be declared unconstitutional by the courts unless relieved of all doubt as to its unconstituionality, and that, whenever a doubt

does exist, it should be resolved in favor of the validity of the enactment.

In the case of the *City of Mobile v. L. & N. R. R. Co.* 124 Ala. 132, the above provision of the constitution of 1865 was declared to be mandatory, and it was there decided that the act of the legislature there under consideration, which contained in its body a subject not described in the title, was void.

The vital and material question here is, whether the subject contained in the body of the act in question is described in the title.

The subject of the grant to the city of Mobile, described in the title of the act, is "riparian rights in the river front." The subject of the grant to the city of Mobile, contained in the body of the act is, "the shore and soil under the Mobile river, situated within the boundary lines of the city of Mobile." It is admitted that the Mobile river, within the boundary limits of the city of Mobile, is a tidal stream and the land in question is covered by tide-water. Moreover, of this, the court would take judicial notice.

"Riparian" is defined in the Century Dictionary as from the Latin word *riparius* of or belonging to the bank of a river, in turn derived from *ripa*, a bank and defined thus: "pertaining to or situated on the bank of a river."

In the Standard Dictionary a "riparian proprietor" is defined as, "one who owns land bounded by a stream or other water."

In Webster's International Dictionary of 1905, p. 1244, the word "riparian" is defined: "of or pertaining to the band of a river, as riparian rights."

In the Encyclopedia Americana of 1904, vol. XIII we find, "riparian rights are those of one who owns the land bounding upon a water course."

Such are some of the definitions of "riparian" given by the lexicographers.

In *Gough v. Bell*, 22 N. J. Law, pp. 441, 464, a riparian owner is said to mean in its common law sense, the owner of the *ripa*, or bank of streams not navigable, though it is frequently used in the books to indicate the owner of the land adjoining the shore of tide water above the ordinary flow of the tide.

In *Bardwell v. Ames*, 39 Mass. (22 Pick.) pp. 355, a riparian owner is said to mean an owner of land bounded generally on a stream of water, and as such, having the qualified property in the soil to the thread of the stream.

In *Potomac Steamboat Co. v. Upper Potomac Steamboat Co.*, 109 U. S. 672, it was said: "A riparian proprietor is one whose land is bounded by a navigable stream and among the rights he is entitled to as such are, access to the navigable part of the river from the front of his lot, the right to make a landing, wharf or pier for his own use, or for the use of the public, subject to such general rules and regulations as the legislature may impose."

In *Commonwealth v. City of Roxbury*, 75 Mass. (9 Gray) pp. 451, 421, it is said: "The words 'riparian proprietor' have been heedlessly extended from rivers and streams to the shores of the sea. If it is necessary to express it by a single adjective, the term 'littoral proprietor' as used by the supreme court of the United States, in the *City of Boston v. Lecraw*, 58 U. S. (17 Howard) 426, 432, is more accurate."

In *Potomac Steamboat Co., supra*, it was said, "A riparian right is the result of that full dominion which every one has over his own land, by which he is authorized to keep all others from coming upon it except upon his own terms. It is defined as the right of the owner of lands upon tide water to maintain his adjacency to it, and to profit by this advantage and otherwise as a right in the riparian owner to preserve and improve the connection of his property with the navigable water. *The rights which a riparian proprietor has, with respect to the water, are entirely derived from his possession of the land abutting thereon.*" Italics ours.

In *Yates v. Milwaukee*, (10 Wal.) 497, it was said: "The riparian rights of persons owning land, fronting on navigable waters are defined to be, access to the navigable river in front of his lot, the right to make a landing, wharf or pier for his own use or the use of the public, subject to the general rules imposed by the legislature for the rights of the public."

In *McCarthy v. Murphy*, 96 N. W. 531, (119 Wis. 159) it was said: "Riparian rights are not common to the

citizens at large but exist as incidents to the right of the soil itself adjacent to the water. *In such ownership they have their origin.* They may and do exist although the fee in the bed of the river or lake be in the state." Italics ours.

In *Diedrich v. N. W. Ry. Co.*, 42 Wis. 248, on page 262, it was said, "Riparian rights are held to rest upon the title to the bank of the water, *and not upon the title to the soil under the water;* riparian rights proper being the same, whether the riparian owner owns the soil under the water or not." And again on page 264, same case, it was said, "The rule that riparian rights rest upon the title to the banks and not to the bed of the water, is also discussed in the same opinion of Cole, J., in which it enters into the judgment of the court more distinctly than it does in this case, and need not be noticed here at length. We take it to rest on sound principles, and to be affirmed or implied in a great majority of adjudged cases involving the point. It is distinctly recognized in *Chapman v. O. & M. River R. R. Co.*, 33 Wis. 629. The authority of the latter case was assailed at the bar in *Delaplaine v. Railway Co.*, (42 Wis. 214). The criticism however, failed to disclose to us any error in the principle of the decision or in the reasoning of the opinion. We think it amply sustained by the authorities cited in it; and fully supported if need were, by the later and very able case in the English House of Lords, of *Lyons v. Fishmonger's Company*, L. R. I. App. Cases, 622 which is a direct and most satisfactory authority in support of the rule under consideration."

In *Lyons v. Fishmonger's Company*, *supra*, on pages 682-683, it was said by Lord Selborne: "But the rights of a riparian proprietor, so far as they relate to any natural stream, exist *jure naturae*, because his land has, by nature, the advantage of being washed by the stream; and if the facts of nature constitute the foundation of the right, I am unable to see why the law should not recognize and follow the course of nature in every part of the same stream. * * * * * With respect to the ownership of the bed of the river, this cannot be natural foundation of riparian rights properly so called, *because the word 'riparian' is relative to the bank, and not the bed of the*

*stream;* and the connection, when it exists, of property on the bank with property in the bed of the stream depends, not upon nature, but on grant or presumption of law. * * * * * The title to the soil constituting the bed of a river does not carry with it any exclusive right of property in the running water of the stream, which can only be appropriated by severance, and which may be lawfully so appropriated by every one having a right of access to it. It is, of course, necessary for the existence of a riparian right that the land should be in contact with the flow of the stream; but lateral contact is as good, *jure naturae,* as vertical. * * * * * It is true that the bank of a tidal river, of which the foreshore is left bare at low water, is not always in contact with the flow of the stream, but it is in such contact for a great part of every day in the ordinary and regular course of nature, which is an amply sufficient foundation for a natural riparian right."

In *Stevens Point Boom Co. v. Reily,* 44 Wis. 295, it was said on page 305, "Such being the riparian right of the appellants, they may lawfully, until prohibited by statute, construct, in front of their land, proper booms to aid in floating logs, so as not to violate any public law or obstruct the navigation of the river by any method in which it may be used, on infringe upon the rights of other riparian owners. *Although this right appertains properly to their riparian title and not to their title to the soil under the water,"* etc. Italics ours.

In Gould on Waters, (3rd Ed.) § 148, on page 298, it is said: All riparian rights depend upon the ownership of the land which is contiguous to and touches upon the water; and, in the case of tide waters, at common law, upon the ownership of the land above and adjoining the edge of the water at ordinary high-water mark. They attach to the land, and an express mention in the deed that they are sold with it is surplusage.

In Farnham on Waters, Vol. 1, page 548, it is said, "Ownership of dry land is a necessary incident to the erection of a wharf, because attachment to the land above high-water mark is absolutely necessary, and the only one having a right to make such attachment is the owner of the land."

[Mobile Dry Docks Co., et al., v. The City of Mobile.]

"The ownership of land under water is not the foundation of riparian rights properly so called, because the word 'riparian' is relative to the bank, and not to the bed of the water. Riparian rights depend upon the ownership of land which is contiguous to, and touches upon the water and lateral contact is as good as vertical."— 24 Am. & Eng. Ency. of Law, (2nd Ed.) pages 980-1 and notes.

From the foregoing authorities it is quite clear that the words "riparian rights" have a well defined legal meaning, and riparian rights in the nature of an easement have their origin in, and are dependent upon, the ownership of the upland, contiguous to and attingent on the water, and attached to and are appurtenant to the upland, and not to the soil under the water.

"A 'shore' is defined to be land on the margin of the sea or lake or river; that space of land which is alternately covered and left dry by the rising and falling of the tide; the space between high and low water marks. It is synonymous with 'beach.'—*Elliott v. Stewart*, 14 Pac. (15 Oregon 259) 416-417.

By the common law, a shore of the sea and, of course, all arms of the sea, is the land between the ordinary high and low water-marks; the land over which the daily tide ebbs and flows.—*United Staes v. Pachico*, 69 U. S. (2 Wallace) 587-590.

In the case of *Mobile v. Eslava*, 9 Porter, 597, it was said by this court: "The shore of the sea, and its arms, is that space of land, which is alternately covered and left dry by the rising and falling of the tide; in other words, that space of land which is between high and low water mark."

To the same effect as to the definition and meaning of the word "shore," we cite the following cases: *Shively v. Bowlby*, 152 U. S. 1; *Andrus v. Knott*, 12 Or. 501; *Dana v. Jackson, St. Wharf Co.*, 31 Cal. 118; *Mather v. Chapman*, 40 Conn. 382; *Littlefield v. Littlefield*, 28 Me. 180; *Montgomery v. Reed*, 69 Me. 510; *Garrish v. Proprietors of Union Wharf*, 26 Me. 284; s. c. 46 Am. Dec. 568; *Sullivan Timber Co. v. City of Mobile*, 110 Fed. Rep. 186; *Morris Canal & Banking Co. v. Brown*, 27 N. J. Lew, 13; *Doane v. Willcut*, 66 Am. Dec. 369; *Bell v.*

*Gough,* 23 N. J. Law 624; *Lorman v. Benson,* 8 Mich. 18; 77 Am. Dec. 435.

It will be seen from the above authorities that there can exist no doubt that the word "shore" has a well defined legal meaning. So we have from lexicographers, law text writers, and the adjudications of the courts, what is understood and meant by the terms "riparian rights" and "shore."

The "shore" and soil under the water, and "riparian rights" are entirely distinct and separate subjects, and neither includes the other. They are as separate and distinct as "timber rights" conveyed in a deed, are from the fee in the soil on which the timber stands, or a "right of way" granted in a deed from the fee in the soil over which the "right of way" is granted.

Suppose the state of Alabama had owned the fee in the uplands along the river front within the incorporated limits of the city of Mobile, would a grant by the state to the city of Mobile of the "riparian rights" along the river front have passed the fee in the uplands? There can be but one answer to this question and that is, the fee would not pass by such grant, and, for the reason, that the two subjects are wholly separate and distinct. If this be true, in such a case, could it be said that the title of an act, which described the subject of the grant as "riparian rights" would give any notice of an intention in the body of the act to grant the absolute fee in the soil of the upland? We think not.

"The words of a statute, if nothing appears to the contrary, should be so construed and understood as to give them their popular signification."—*Favor v. Glass,* 22 Ala. 621; *Wetumpka v. Winter,* 29 Ala. 660.

Primarily—that is, in the absence of anything in the context to the contrary—common or popular words are to be understood in a popular sense; common law words according to their sense in the common law; and technical words pertaining to any science, art or trade, in a technical sense.—Lewis Sutherland on Statutory Constructions, § 389. And in the same work § 390, "As a general rule the words of a statute are to be taken in their ordinary and popular sense, unless it plainly appears from the context or otherwise that they were used

in a different sense." These are cardinal rules of construction supported alike by reason and authority. The subject "described" in the title of the act in question is "riparian rights" to the river front. We have seen that the words "riparian rights" have a common law sense or meaning and in construing the statute must be so taken, and when so taken, must be referred to the upland contiguous to and bordering upon the water, and not to the "shore" and soil under the water.

In arriving at the intention and meaning of the legislature in the employment of the phrase "riparian rights" in the title of the act, by no rule of construction are we authorized to separate the two words in order to give the word "rights" a more comprehensive and extended meaning than when taken in conjunction with the qualifying word "riparian" as it occurs in the title, even for the purpose of upholding the statute by generalizing the title in a way to embrace the subject contained in the body of the act. For to do this would be nothing less than to substitute a title for the act different from the one given it by the law-makers. Nothing can be clearer than that the word "riparian" was used to characterize, limit and define the "rights"—the subject of the law to be dealt with in the body of the act. No one upon reading the title, or hearing it read, would for a moment conceive the idea that any other rights than "riparian rights" was the subject to be legislated upon. In the body of the act the subject is the "shore and soil under the Mobile river to the channel line," no reference is made to "riparian rights." If the title of the act had been to grant the "shore and soil under the Mobile river," and the body of the act with such title had contained a grant of "riparian rights" to the river front, in the face of the law that "riparian rights" are appurtenant to the upland, and not to the shore and bed of the river, would any court hesitate in declaring that the subject in the body of the act was not described in the title? We think not.

In the case of *Transportation Co. v. The City of Mobile*, 128 Ala. 335, which was appealed from this court to the supreme court of the United States, 187 U. S. p.

487, in an opinion by Mr. Justice Brown, it was said: "The act of 1867 declared no more than that the rights possessed by the state in the shore and soil under Mobile river were granted to the city. We see nothing objectionable in this act. What the state held, it held as trustee for the public, and it had a right to devolve this trust upon the city of Mobile. What it had not, it could not grant and the rights of the "riparian proprietors" were neither enlarged nor restricted by this act." Of course that court did not enter into a discussion of the constitutionality of the act and expressly declined to do so for the reason stated by the court that that question was a local one with which the federal court had nothing to do, but clearly enough indicated in what we have above quoted from the opinion that the subject "riparian rights" and the subject "the shore and soil under Mobile river" were wholly separate and distinct.

In the case of *Watson v. State,* 37 So. Rep. on page 226, we had under consideration an act, the title of which was: "An act to prohibit the sale or dispensing of spirituous, vinous or malt liquors, or other intoxicating beverages in the county of Wilcox, on and after the 1st day of April, 1893." The body of the act included as one of the subjects thereof, the "keeping of such compounds for sale." It was there ruled that the body of the act, in so far as it purported to make such "keeping" an offense, included a subject of legislation not expressed in the title, and was violative of section 2, article 4 of the constitution of 1875, which provision was similar to that of the constitution of 1865.

In the case of the *City of Mobile v. L. & N. R. R. Co.,* 124 Ala. 132, where an act described in the title certain sections of an act to be amended, and contained in the body of the act an independent section not expressed in the title, it was ruled that the body contained a subject not expressed in the title, and was therefore violative of the constitution.

In *Dorsey's Appeal,* 72 Penn. St. 192, the contention arose between mechanics claim-creditors, and judgment creditors. The lands were free-hold. The title of the act under which the mechanics claimed was "An act relating

to the liens of mechanics, material-men and laborers upon lease-hold estates and property thereon, in the county of Venango." One section of the act extended the lien to a free-hold estate. Its language declaring the lien is "on the ground of the owner necessary for the useful purposes of the building." The court, Agnew, J., said: "Reasons might be given why lease-holds should be subjected to a lien for work and material, when a free-hold would not be. The former are often of short duration and engines, derricks, machinery, and even buildings may be removed therefrom during the term. But it is sufficient that the language has, by the title of the act clearly confined the lien to lease-holds. This description *ex vi termini*, excludes estates of a higher grade." It was ruled that the section so embraced in the body of the act contained a subject not expressed in the title of the act and was, therefore, violative of the constitutional provision of that state, similar to the provision contained in our constitution, which we now have under consideration.

So, we may say here, the subject "described" in the title of the act, "riparian rights," *ex vi termini*, "excludes estates of a higher grade,"—the fee in the shore and soil under the river.

The foregoing authorities, we think, demonstrate beyond question that the term "riparian rights" has a well defined common law meaning, and whether employed in a deed by an individual, or in a grant by the sovereignty can be understood to mean but one thing and that— rights appurtenant to upland ownership. And these authorities likewise demonstrate that "riparian rights" do not originate or proceed from the ownership of the shore or soil under the water.

It logically follows that the subject contained in the body of the act in question is not described in the title and, thus violative of the constitution. This conclusion is opposed to that reached in the case of *Mobile Transportation Co. v. City of Mobile*, 128 Ala. 335, and the latter case must, therefore, be overruled.

It is insisted in the argument by counsel for appellee that the decision in the case of *Mobile Transportation*

*Co. v. City of Mobile, supra,* should not now be disturbed for the reason that property rights may have been acquired under the decision in that case upholding the constitutionality of the act in question. It is difficult to understand how any absolute rights of property could be acquired under said act unless in palpable violation of a public trust known to every one which was lodged in the state by the compact under which the state was admitted into the union. The act itself purported to transfer this trust to the city of Mobile.

Query: Had the legislature the power to do more than to transfer or delegate this trust?

This brings us to a consideration of the act of February 18th, 1895, entitled "An act to fix the rights of the city of Mobile to certain real estate," and, the act amendatory thereof, approved December 5th, 1896, and which are relied upon by the appellee as the basis of title to the land in question. Apart from any consideration of the question as to the constitutionality of the acts, we think they can avail the appellee nothing.

The act approved February 18, 1895, (Acts 1894-5 p. 815) the title of which is, "To fix the rights of the city of Mobile to certain real estate," in section 1 provides as follows: "That the absolute and unconditional title and right to all real estate, rights and easements pertaining or incidental to any real estate, or any right therein or thereto heretofore vested in the board of aldermen and common council of the city of Mobile, or in the port of Mobile, or in the present city of Mobile, whether held in trust or otherwise, except such as heretofore vested in the trustee for the holders of the bonds of the city of Mobile, is hereby vested absolutely and unconditionally in the city of Mobile to be by it held, managed, controlled, and disposed of as to it may seem best."

It is to be observed that no real estate is particularly described and by the very terms of the act, it operated, and purports only to operate upon real estate "heretofore" vested in the city of Mobile, etc.

[Napier, *et al.* v. Elliott.]

It is perefectly clear that if there be no real estate answering to such call, then there is no field of operation for the act. If the act of January 31, 1867, is void for constitutional grounds then the real estate described in that act was never vested in the city of Mobile and is consequently without the influence and operation of the act of February 18, 1895. The act of December 5th, 1896, (Acts 1896-7, p. 49) entitled an act "to amend an act, entitled an act to fix the right of the city of Mobile to certain real estate, approved February 18, 1895," in respect to the matter in hand did nothing more than to re-enact the former statute employing the same language used in the older statute.

The questions which we have considered are alike common to all the above cases, and, since the conclusion reached fully determines the rights of the parties in this litigation, we deem it unnecessary to consider other questions raised in the record which are applicable to some but not all the cases before us.

It follows from what we have said that the act of January 31, 1867, must be declared unconstitutional and void, and this conclusion leaves the appellee without any title upon which to base a right of recovery in ejectment.

In each of the causes the judgment of the circuit court appealed from must be reversed and the cause remanded.

Reversed and remanded.

HARALSON, SIMPSON, ANDERSON and DENSON, JJ., concur.

TYSON, J. dissents.