# Preist *v.* The State.

*Violating Prohibition Law.*

(Decided June 19, 1912.   Rehearing denied July 11, 1912.
59 South. 318.)

1. *Intoxicating Liquors; Illegal Sales; Statutes; Construction.*— Acts 1909, p. 8, and Acts 1909, p. 63, are companion acts, and must be construed together, and under section 7, of the 1st act, they must be liberally construed, so as to accomplish the purpose intended.

[Preist v. The State.]

2. *Same; Keep or Have in Possession.*—Where the defendant who had, in a warehouse in this state, liquor shipped to him from a sister state, directed a drayman to take the liquor from the warehouse and carry it to a resort maintained by the defendant, and the liquor was seized by officers while in possession of the drayman, the defendant was properly convicted of keeping or having in possession for sale, prohibited liquors, in violation of Acts 1909, p. 8.

3. *Statutes; Construction; Intent.*—In construing a statute, the courts will endeavor to ascertain the legislative intent, and so construe the acts as to suppress the mischief intended, as gathered from the words used when taken in their ordinary sense, unless there is something to show their use in a different sense; penal statutes must not be so strictly construed as to defeat the obvious purpose of the legislature in enacting them.

4. *Commerce; Interstate; Shipment of Liquor.*—A shipment of liquor from one state to another is under the protection of the interstate commerce law only to the time of delivery to the consignee at point of destination, and thereafter become subject to state law. Hence, where the liquor had been delivered to the agent of the buyer, authorized by the buyer to receive the same at point of delivery within the state of Alabama, the liquor is subject to the state prohibition laws.

APPEAL from Barbour Circuit Court.

Heard before Hon. MIKE SOLLIE.

Will Preist was convicted of violating the prohibition law and he appeals. Affirmed.

A. H. MERRILL & SON, for appellant. All property is equally sacred in view of the Constitution, and in prohibition statutes, it is the abuse or misuse which constitutes the mischief.—*Eidge v. City of Bessemer,* 164 Ala. 599; *Vernon v. The State,* 161 Ala. 83. There was no holding or possession or detention in this case.—Cal. 254. The defendant is guilty of no offense under the laws of Alabama unless it be a violation of the Carmichael or Fuller Acts, and under the indictment he cannot be convicted on the proof offered.—57 South. 502; 41 S. E. 18; 35 Am. St. Rep. 508; 31 Md. 219; 68 S. W. 977; 41 S. W. 76; 138 Mass. 498; 117 Ia. 469; *Eubanks v. The State,* 17 Ala. 181; 27 Fed. Cases, 1155. The indictment was evidently found under the Fuller Bill, and the word "keep" is used in connection with "store

and deposit," therefore, defendant was entitled to the affirmative charge.—*Jackson v. The State*, 145 Ala. 54; *Speilburger v. Brandes*, 58 South. 75. The liquor was protected by the Interstate Commerce law, and not subject to seizure.—91 Ala. 2; *Vance v. Vandercook*, 170 U. S. 444; *Hyman v. So. Ry. Co.*, 203 U. S. 180; *Toole v. The State*, 170 Ala. 41.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

PELHAM, J.—The defendant was convicted for violating the prohibition laws. The indictment charged that the defendant sold, offered for sale, kept for sale, or otherwise disposed of, spirituous, vinous, or malt liquors. The proof was that eight casks of beer had been shipped by boat to the defendant from Florida; and, while they were in the warehouse on the river at Eufaula, Ala., addressed or marked to "W. E. Priest, Eufaula, Ala.," the defendant, Priest, sent a note, signed by him, to one Mercer, who ran a public dray line in Eufaula, directed to the wharfman, one Owens, instructing Owens to deliver to the bearer of the note eight casks. This note was turned over by Mercer to one of his draymen, who went to the wharf and received the eight casks on the defendant's written order, loaded them on the dray, and, while on his way to a place, sometimes known and called the "Country Club," where he had been instructed to carry the casks, the drayman was intercepted by the city officers of Eufaula and the beer seized. The defendant was shown to be the owner of and to have had charge of the place called the "Country Club," and it was shown that the place was used as a pleasure resort. The casks of beer were seized by the officers on the road to the Country Club,

about 150 yards from the defendant's house. The eight casks contained 960 bottles.

The principal contention made by the defendant's counsel is that there is not sufficient proof to show that the defendant kept for sale the prohibited beverage, as charged in the indictment. The first proposition advanced by counsel in brief is that the prohibition laws passed at the special session of the Legislature of 1909, and commonly called the Carmichael Bill (Acts 1909, p. 8) and the Fuller Bill (Acts 1909, p. 63), should be construed strictly against the state and in favor of the defendant. These laws are companion acts, and must be construed in connection.—*Grace v. State,* 1 Ala. App. 211, 56 South. 25. And it is specifically provided that they "shall be liberally construed so as to accomplish the purposes thereof, which is to promote temperance and reduce and discourage the use and consumption of the said prohibited liquors and beverages."— Acts 1909, p. 12, § 7.

It cannot be doubted but that the delivery of the casks of beer to the drayman on the defendant's order was the same, in legal effect, as a delivery to the defendant. At the time of the seizure, then, the beer was in the possession of the defendant. The delivery of the casks by the defendant in a resort known as the "Country Club" was prevented by the action of officers of the law against the will of the defendant; and, construing the prohibition laws liberally, as we are required to do, the defendant's intention of delivering the prohibited beverage in a place where the laws make such delivery prima facie evidence of sale or other unlawful disposition (Acts 1909, p. 64, § 5) is shown; and this, even if not to be considered as being taken as prima facie evidence of a sale or other unlawful disposition, because the casks were not actually delivered to the resort,

could be looked to as a circumstance in determining whether the defendant had the prohibited beverage in possession for sale. There can be no distinction, under a fair and reasonable construction of the prohibition statutes, as the terms are there used, between having in possession for sale and keeping for sale. In section 3 of the Carmichael Bill (Acts 1909, p. 9), it is manifest that *"keep* or *have* in possession for sale" is used as meaning the same thing. If one has a possession of the prohibited liquors for the purposes of sale, he is keeping for sale such liquors in the clear intent and meaning of these statutes; and the fine distinctions drawn by dictionaries between the meaning of the words "to have" and "to keep," with reference to the use of these words in a different connection than that in which they are here used, and not associated with the text of the statutes, have no application.

"The office of the court is to construe statutes so as to suppress the mischief, to prevent invasion, and to advance and add force to the remedy, according to the true intent of the makers of the act, for the public good."—6 Mayfield's Dig. p. 842, § 26. In construing the statutes, the court should not be governed by the literal expressions of the statute, but should look to the legislative intent.—*Davis & Co. v. Thomas,* 154 Ala. 279, 45 South. 897. Words used are to be taken in their ordinary or popular sense, unless it plainly appears they were differently used.—*Mobile D. D. Co. v. Mobile,* 146 Ala. 198, 40 South. 205, 3 L. R. A. (N. S.) 822, 9 Ann. Cas. 1229; *Mayor, etc., v. Winter,* 29 Ala. 651. Penal statutes are not to be so strictly construed as to defeat the obvious intention of the Legislature.—*Crosby v. Hawthorn,* 25 Ala. 221; *Walton v. State,* 62 Ala. 197.

The shipment, being from another state (Florida), was under the protection of the interstate commerce law (Wilson Act [U. S. Comp. St. 1901, p. 3177]) only

up to the time of its delivery at the point of destination to the consignee. The provisions of the Wilson Act are that the shipment, upon arrival in another state, shall be subject to the operation and effect of the laws of that state; and the courts, in construing the language of this act, have held that it is the continuity of the shipment that is protected, and that the shipment is protected, under this law, "until its arrival at the point of destination and delivery there to the consignee."—*Bowman v. Chicago & N. Ry. Co.,* 125 U. S. 465, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700.

In this case the course of the goods in transit had terminated, and the shipment had been completed. The goods had been delivered to the agent of the defendant authorizd by him to receive them at the point of delivery. The delivery to the defendant's agent was the same as a delivery to the principal, the defendant, and the agent's possession was the possession of the principal. On the facts presented, the goods were in the possession of the defendant, for the purpose of being carried to a place at which a delivery, under the provisions of the prohibition laws, is deemed prima facie evidence of a sale or other unlawful disposition (Fuller Bill [Acts 1909, p. 64, § 5]), and a delivery there only prevented by seizure of the officers of the law.

We have carefully considered the rulings of the court on the evidence and find no prejudicial error of which the defendant can complain; nor does investigation of the record disclose a reversible error presented on any question before us for review. The evidence was sufficient to authorize the jury to find the defendant guilty, and the court properly submitted the case to the jury and refused the general instruction requested on behalf of the defendant.

The judgment of the court below is affirmed.

Affirmed.