SAMUEL B. HAMLIN *vs.* PAIRPOINT MANUFACTURING COMPANY.

Bristol.   Oct. 28, 1885. — Jan. 13, 1886.   FIELD & C. ALLEN, JJ., absent.

A deed of land described the boundary line as beginning at the southwest corner, thence running northerly in the east line of P. Street, to the line of H. Street; thence easterly in line with said street to the river, and so on in the same course into the river. H. Street at the time of the conveyance extended from P. Street to the river, a distance of about thirty feet. The entire length of the last line named was several hundred feet. The grantor owned other land northerly of the land conveyed, and abutting on it except for the distance the land conveyed was bounded by H. Street. *Held*, that the northerly line of the land conveyed was the southerly line of H. Street, and a line in extension of that line.

The St. of 1806, *c.* 18, giving the owners of lots of land adjoining Acushnet River, and their heirs and assigns, power to erect, continue, and maintain wharves, extending to the channel of the river, operates as a legislative grant to the respective owners of such lots of the interest in the soil between their lots and the channel of the river, sufficient to enable them to maintain trespass if their rights are invaded.

TORT, in two counts. The first count was for breaking and entering the plaintiff's close in New Bedford, described as bounded

on the east by the channel of the Acushnet River; on the south by the southerly line of Howland Street and the extension of said southerly line eastwardly to said channel; and on the west and south by lands of certain persons named. The second count alleged that the plaintiff was the owner of a dock and tract of land, with the water and water rights adjacent thereto, bounded as described in the first count, and was the owner of the right to provide docks, and to erect, continue, and maintain wharves thereon, and was entitled to the exclusive use and enjoyment of the same; and that the defendant forcibly entered the same, filled up the dock, and erected and maintained a wharf and a building thereon, and deprived the plaintiff of the use of his dock and land. Writ dated May 7, 1883. The answer contained a general denial, and also denied that the close described was the property of the plaintiff.

The land in dispute is that included between the line marked " Northerly line of New Wharf " and the dotted line below it, which represents the southerly line of Howland Street extended, as shown on a plan used at the trial, a copy of which is printed in the margin.*

Trial in the Superior Court, without a jury, before *Mason*, J., who reported the case for the determination of this court, in substance as follows:

By deed dated February 18, 1860, Edward L. Baker and others conveyed to the plaintiff a large tract of land, which was within the limits named in the St. of 1806, *c.* 18, § 1.* The land conveyed by this deed was bounded by a line beginning on the east line of Prospect Street, thence running northerly, one hundred and forty-two feet, on the east line of said street, to the north line of Howland Street; thence westerly, sixty-eight feet and thirty-five one-hundredths of a foot, on the north line of said street; thence northerly one hundred and nineteen feet and sixteen one-hundredths of a foot; thence easterly one hundred feet and seventy-seven one-hundredths of a foot, to the river, and on the same course into the river; thence southerly by the river; and thence westerly to the point of beginning.

On February 20, 1880, the plaintiff conveyed to Alexander H. Seabury a portion of the above-described land, bounded and described as follows: " Beginning at a point on the east line of Prospect Street, at the southwest corner of said lot, at land owned or occupied by the Mt. Washington Glass Company, and formerly held by John W. Howland; thence running easterly in the line of said Mt. Washington Glass Company's land to the river, and so on in the same course into the river; then beginning again at the southwest corner, thence running northerly in the east line of Prospect Street, and further on in the same course feet to the line of Howland Street; thence easterly in line with said street to the river, and so on in the same course into the river; and thence southerly by the river, till it meets the first-mentioned line, with all the privileges and water rights to the same belonging."

On July 27, 1880, Seabury conveyed to the defendant a parcel of land, bounded and described as follows: " Beginning at a point on the east line of Prospect Street, at the southwest corner of said lot, at land owned or occupied by the Mt. Washington Glass Company, and formerly held by John W. Howland, then running easterly in the line of said Mt. Washington Glass Company's land to the river, and so in the same course into the river; then

---

* This act authorized the owners of land adjoining on Acushnet River, within certain limits, to build and extend wharves below low-water mark in said river. Its provisions are set forth in full in 108 Mass 209, and those bearing upon the questions involved in this case are stated in the opinion.

beginning again at the southwest corner, thence running north-erly in the east line of Prospect Street, and further on in the same course to Howland Street, thence easterly in line with the south side of said Howland Street to the river, and so on in the same course into the river; and thence southerly by the river until it meets the first-mentioned line, with all the privi-leges and water rights to the same belonging. Being the same premises conveyed to me by Samuel B. Hamlin by deed dated February 20, 1880."

At the time of the execution of the deeds of February 20 and July 27, 1880, Seabury was an officer in the defendant company. One Shirley acted as the agent of Seabury in negotiating for the property conveyed to him, and drew the deed of February 20, 1880, the deed of February 18, 1860, having been handed to Shirley by the plaintiff for reference.

Howland Street extended westerly from Prospect Street until 1871, when it was laid out and constructed eastwardly from Prospect Street to the river, a distance of about thirty feet. At the time of the building of the wharf and storehouse hereinafter named, no authority had been given by the Legislature to extend Howland Street into the river, and no attempt had been made by the city of New Bedford to lay it out into the river, and no plan contemplating such extension was used or referred to when the three deeds above mentioned were executed. But since the construction of said wharf, namely, in 1883, the city, by authority of the St. of 1883, c. 176,* laid out and accepted an extension of Howland Street from the shore to the harbor line.

At the time of the execution of the deed of July 27, 1880, there were no structures existing in tide water on any part of the premises described by any of the deeds, nor subsequently thereto, except as hereinafter stated. There was a small wharf, the north line of which was about thirty feet south of the south line of Howland Street extended into the water, which wharf extended into the water about one hundred and twenty feet. Soon after the execution of the deed of July 27, 1880, the de-fendant constructed a wharf in the following manner: beginning at the northeast corner of the small wharf already described,

---

* This act took effect upon its passage, May 15, 1883.

thence running northerly in a straight line to the south line of Howland Street extended; thence easterly in substantially a straight line about five hundred feet, but not to the centre of the channel of the river. The last-described line was the northerly line of the wharf; and this line at its west end was substantially in line with the south line of Howland Street extended, and at the east end it projected over and to the northward of the said south line of Howland Street extended, about three feet. The defendant also constructed a storehouse on said wharf, the north side of which was even with the north line of the wharf, and which also projected over the said extension of the south line of Howland Street. The defendant has been in the possession of the said wharf and storehouse since their construction, and is now in possession of the same.

None of the structures built by the defendant company extended as far north as the centre line of Howland Street extended into the water. The whole of said wharf, built by the defendant, was constructed in navigable tide water.

The tort complained of by the plaintiff was the building and maintaining of said wharf and storehouse thereon, over and northerly of the extension of the south line of Howland Street into the water.

On these facts, which were admitted in evidence subject to all legal objections, the judge found for the plaintiff, and assessed damages in the sum of one dollar. If the plaintiff was not entitled to recover, judgment was to be entered for the defendant; otherwise, judgment for the plaintiff upon the finding.

*W. H. Cobb*, for the defendant.

*J. M. Morton & H. M. Knowlton*, for the plaintiff.

MORTON, C. J. It clearly appears that the northerly boundary of the land conveyed to the defendant is the southerly line of Howland Street extended into the river, and that the defendant has built its wharf and storehouse a few feet over this line northerly. The defendant contends, however, that the plaintiff has no interest in the land north of the southerly line of Howland Street extended, because his deed to Seabury conveyed the land to the centre of Howland Street. By this deed, the plaintiff conveyed a tract of land, of which the description, so far as material to this case, is as follows: "Then beginning again at

the southwest corner, thence running northerly in the east line of Prospect Street and further on in the same course      feet to the line of Howland Street; thence easterly in line with said street to the river, and so on in the same course into the river."

It is the general rule of construction, that, if in a deed the land is bounded on a street, or its boundary lines run to a street and thence by the street, the grantee takes to the middle of the street, unless the deed or the character of the locality to which it is to be applied indicates a different intention of the parties. Each case must depend upon its own circumstances. *Motley* v. *Sargent*, 119 Mass. 231, and cases cited. *Dean* v. *Lowell*, 135 Mass. 55, and cases cited.

There are several features in the case at bar which seem to us to take the case out of the general rule. In the deed to Seabury the westerly line of the granted premises does not run to the street and thence by the street to the river. It runs "to the line of Howland Street," and "thence easterly in line with said street to the river, and so on in the same course into the river."

Ordinarily, if a boundary runs to or by the line of an object, such as a house or a lot of land, the exterior limit of the object is intended. So, in common language, if one speaks of the line or lines of a street, the exterior limits would be understood and intended. We think the grantor intended to use the word "line" in this sense in the deed before us.

One reason given for the general rule is, that it is not to be presumed that the grantor intends to reserve a narrow strip of land, not capable of any substantial use by him, after having parted with the land by the side of it, and of no considerable value if the way should be discontinued. This reason does not apply in this case. The northerly line of the lot sold to Seabury is several hundred feet long. At the time the deed was made, Howland Street covered only about thirty feet of this line, and no extension of the street was legal, and none was contemplated. Much the largest part of Seabury's northerly boundary, therefore, was not upon the street, but upon other land of the grantor. No fair inference can be drawn that the grantor did not intend to retain the strip of land equal in width to half the width of the street, for it was a part of his other land, and as valuable as any other part.

Upon all the circumstances of this case, we are of opinion that the northerly line intended by the parties in the deed to Seabury was the south line of Howland Street and a line which is an extension of such line. We have considered this question without regard to the evidence in the case of the acts of the parties showing their understanding of the deed, for it may be doubtful whether there is here a case of latent ambiguity which makes such evidence admissible. But if such evidence may be considered, the construction we have adopted is confirmed by the fact that, when Seabury, who appears to have bought the land as an agent or intermediary for the defendant, conveyed to the defendant, he described the northerly boundary of the lot as running from Howland Street " easterly in line with the south side of said Howland Street to the river," a description which clearly excludes any part of the street.

The defendant also contends that neither the plaintiff nor his grantor had any rights in the soil below low-water mark. If this be so, it is fatal to the plaintiff's claim, and also to the right of the defendant to maintain its wharf and storehouse. But this ground cannot be maintained. The St. of 1806, *c.* 18, provides that the owners of lots of land adjoining Acushnet River in New Bedford, "their heirs and assigns, shall be, and hereby are, authorized and empowered to erect, continue, and maintain wharves parallel with the line of their several lots, as they abut upon said river ; said wharves to extend to the channel of said river, if the owners of said lots think proper."

This operated as a legislative grant to the owners of lots of an interest in the soil between their lots and the channel of the river. Whether it gave them an absolute fee without any restrictions, and whether, since the passage of the St. of 1866, *c.* 149, they are subject to the regulations of the Harbor Commissioners, and to what extent, it is not necessary to consider in this case. The act certainly gave them a possessory title for the purpose of building wharves, sufficient to enable them to maintain trespass if their rights are invaded. This was so held in *Haskell* v. *New Bedford*, 108 Mass. 208, in which, as in the case at bar, the plaintiff's title depended upon the St. of 1806. It follows that the plaintiff is entitled to judgment upon the finding of the presiding justice of the Superior Court.

The St. of 1883, *c.* 176, passed after this suit was begun, authorizing the extension of Howland Street, has no bearing upon the question of the defendant's liability. .

*Judgment for the plaintiff.*