Cove Properties, Inc. ("Cove"), appeals from a judgment of the Baldwin County Circuit Court dismissing, pursuant to Rule 12(b)(6), Ala.R.Civ.P., Cove's claims against Walter Trent Marina, Inc. ("Trent"), on the basis that those claims are barred by the applicable statute of limitations. We affirm in part, reverse in part, and remand.
Cove filed its complaint on October 17, 1996, alleging that it and Trent are adjoining landowners of property fronting Terry Cove in Bay Ornocor, a body of water located in Orange Beach, Alabama. Cove further alleged that on July 2, 1993, it became aware that Trent had erected a pier that crossed a line extending into the water of Terry Cove from the parties' land boundary. Cove's complaint contains five counts, labeled "causes of action": (1) a request for a declaration that Cove "has paramount property rights in and to all that portion of Terry Cove lying westwardly of the projection of the [parties'] boundary line"; (2) a claim for an unspecified amount of damages; (3) a request for injunctive relief; (4) a claim for an unspecified amount of "just compensation," on the basis that Trent has engaged with the state in joint action that has effected an unlawful taking of its property rights; and (5) a claim under 42 U.S.C. § 1983 for an unspecified amount of damages and for attorney fees based upon alleged action by Trent "in active concert with the State of Alabama" in violation of the United States Constitution.[1]
Trent moved, pursuant to Rule 12(b)(6), Ala.R.Civ.P., to dismiss Cove's complaint, contending, among other things, that the claims therein were barred by Alabama's two-year statute of limitations governing injuries to the person or rights of another not otherwise specified (i.e., § 6-2-38(l), Ala. Code 1975). The trial court heard oral argument and received written memoranda directed to the limitations issue, and subsequently entered a judgment dismissing Cove's complaint on the basis that "[t]his action is barred by the two-year statute of limitations." Cove appealed.[2] *Page 474 
Our supreme court has held that a limitations defense "may be properly raised via [a Rule] 12(b)(6) motion where the face of the complaint shows that the claim is barred."Sims v. Lewis, 374 So.2d 298, 302 (Ala. 1979). The standard for reviewing a Rule 12(b)(6) dismissal was set out in Nance v.Matthews, 622 So.2d 297, 299 (Ala. 1993):
 "On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala. 1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772
(Ala.Civ.App. 1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App. 1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [the plaintiff] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671
(Ala. 1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala. 1986)."
We further note that this court reviews judgments and not opinions, and we will affirm a correct judgment on any valid basis, regardless of whether that basis was accepted or even considered by the trial court. Aldridge v. Valley SteelConstr., Inc., 603 So.2d 981, 983 n. 1 (Ala. 1992) (appellee "may offer in support of its judgment any argument supported by the record, whether that argument was ignored by the circuit court or rejected").
We now consider the allegations of Cove's various stated claims. All of the counts of Cove's complaint are derived from its claim to have riparian rights of access to the waters of Terry Cove[3] by virtue of its ownership of property directly facing Terry Cove. The Alabama Supreme Court has stated that "[a] riparian proprietor is one whose land is bounded by a navigable stream and among the rights he is entitled to as such are . . . the right to make a landing, wharf or pier for his own use, or for the use of the public, subject to such general rules and regulations as the legislature may impose." Mobile Docks Co. v. City of Mobile,146 Ala. 198, 204, 40 So. 205, 207 (1906) (quoting PotomacSteamboat Co. v. Upper Potomac Steamboat Co., 109 U.S. 672,3 S.Ct. 445, 27 L.Ed. 1070 (1884)). These riparian rights, among others, have been legislatively confirmed:
 "The owner of riparian lands upon navigable waters in the state of Alabama may install in front of their respective riparian lands wharves, docks, warehouses, sheds, tipples, chutes, elevators, conveyors and the like for receiving, discharging, storing, protecting, transferring, loading and unloading freight and commodities of commerce to and from vessels and carriers, and may use their riparian lands in connection therewith and dredge out and deepen the approaches thereto, and may charge and collect reasonable tolls for the use thereof. All such structures are to be subject to such lines and limitations as may at the time of making such improvements be laid or placed by any authority of the United States, or of the state of Alabama, *Page 475 
who may have authority to control harbor and pier lines."
Ala. Code 1975, § 33-7-50.
Cove's first, second, and third claims are predicated on a theory that Trent's pier constitutes a continuing trespass and a taking of Cove's riparian rights. Drawing an analogy between its riparian rights to access the water fronting its lot and the rights of a fee simple landowner to possession of his or her land, Cove contends that these claims were subject to either the statute of limitations governing recovery of interests in land or the statute of limitations governing trespass to real or personal property, as opposed to the residual injury statute of limitations. While Alabama requires that all actions "for any injury to the person or rights of another not arising from contract and not specifically enumerated" be brought within two years,see Ala. Code 1975, § 6-2-38(l), "[a]ctions for the recovery of lands, tenements or hereditaments, or the possession thereof" can be brought within 10 years of their accrual (id., §6-2-33(1)), and "[a]ctions for any trespass to real or personal property" can be brought within six years (id., § 6-2-34(2)). Thus, we must determine whether Cove's complaint seeks "the recovery of lands, tenements, or hereditaments" or relief "for trespass to real property"; if either is true, then the trial court erred in dismissing this action in regards to the first, second, and third counts of Cove's complaint.
Under Alabama law, the riparian rights of landowners whose holdings abut running streams or other navigable waterways are hereditaments incident to the adjoining land, and equity will enjoin any direct interference with such rights, on the theory that such interference, if allowed to continue without interruption, will by prescription divest those rights from the aggrieved landowner. In Ulbricht v. Eufaula Water Co.,86 Ala. 587, 6 So. 78 (1889), the Alabama Supreme Court reviewed a judgment in favor of a lower riparian proprietor that enjoined an upper riparian landowner (a city water works) "from the consumption of the whole or any part of said stream for the use of said water-works in supplying the city, to the sensible injury or damage of the complainant, for any purpose for which he may now or in the future have use for said water," and a declaration that the lower landowner was entitled "to the reasonable use of the flowing waters of said stream, as against the defendant, whenever he shall need it." Although it was undisputed that the lower riparian proprietor had not utilized the water flowing on his property for any purpose before commencing his action against the water works, the Ulbricht
court affirmed the judgment, holding in pertinent part:
 "There is no principle of law better recognized, than that every riparian owner of lands, through which streams of water flow, has a right to the reasonable use of the running water, which is a private right of property. The right is one annexed and incident to the freehold, being a real or corporeal hereditament, in the nature of an easement, and must be enjoyed with reference to the similar rights of other riparian proprietors. It is, therefore, a qualified, and not an absolute right of property.
". . . .
 "In this case, the defendant has diverted the water from the stream, and consumes it for the purpose of supplying the wants of a neighboring town. The diversion is rendered unlawful by the fact that it is for an extraordinary or artificial use, and is not restored to its natural channel, where it is accustomed to flow. The authorities speak with one voice in sustaining the proposition, that no person has a right to cause such diversion, and that it is a wrongful act for which an action will lie by the lower riparian proprietor without proof of any special damage. . . . The action is allowed . . . 'to vindicate the plaintiff's right, and to prevent a loss of it by adverse possession and lapse of time.' The cases are numerous in support of this view, and of the reasons upon which such decisions are made to rest. . . . 'They proceed upon two grounds; first, that every injury, from its very nature, legally imports damage; and, secondly, that an injury to a right is a damage to the person entitled to that right, by jeopardizing its continuance, and leading to its very destruction.' In other words, the license to interrupt the right, if *Page 476 
acquiesced in for twenty years, would become conclusive of its [renunciation] by the complainant, by presumed grant or otherwise, under the doctrine of prescription, the defendant's exercise of it being regarded as conclusively adverse, and as having ripened into a good title by lapse of time. The mere non-user of a water power by a riparian owner will not operate to impair his title, or confer any right thereto on another. He has a legal right to have the stream to continue to flow through his land, irrespective of whether he may need it for any special purpose or not."
Ulbricht, 86 Ala. at 590-93, 6 So. at 79-80 (citations omitted). Thus, even though the plaintiff in Ulbricht "[took] no advantage of his . . . right [to use the stream], but allow[ed] the water to flow by unutilized," the invasion of his rights was held to be sufficiently substantial and direct "to call for equitable interference in his behalf . . . to vindicate his right, and prevent a loss of it by adverse user and lapse of time." Id. at 593, 6 So. at 80.
We see no distinction between the nature of Cove's first three claims and that of the plaintiff in Ulbricht. The rights Cove is seeking to vindicate are appurtenant to its riparian tract and, under Ulbricht, are corporeal hereditaments inuring to its tract within the scope of § 6-2-33(2), the 10-year statute of limitations. This was the ruling of the Alabama Supreme Court in Alabama Consol. Coal Iron Co. v. Turner,145 Ala. 639, 39 So. 603 (1905), in which the 10-year statute of limitations was held to be applicable to a claim that an upper riparian proprietor had violated a lower riparian owner's rights by diminishing the flow of water downstream.
Trent asserts that the invasion of Cove's riparian rights alleged in the complaint is in the nature of an action sounding in "trespass on the case" and that its claims are subject to the two-year limitation set forth in § 6-2-38(l) for injuries to the person or rights of another not specified in the Code. However, each of the authorities relied upon by Trent involves consequential injuries to a riparian owner's rights because of the actions of another riparian owner, and notdirect injury arising from an action taking place within a plaintiff's asserted riparian boundaries. For example, inRoundtree v. Brantley, 34 Ala. 544 (1859), the defendant riparian owner dug a ditch that was alleged to have caused water diverted from a stream to overflow onto an adjacent tract and destroy crops growing on the tract; the defendant's digging of a ditch was held not to be an immediate violation of the plaintiff's rights that would support a trespass claim.Roundtree was followed in Eagle Phoenix Mfg. Co. v. Gibson,62 Ala. 369 (1878), which involved consequential damages from an overflow caused by a dam. Similarly, Parsons v. TennesseeCoal, Iron R.R., 186 Ala. 84, 64 So. 591 (1914), involved an act (the upstream pollution of a water course) that violated the plaintiff's property rights only as a consequence of an intervening agency, i.e., the flow of the water course.[4]
Finally, Savannah, A. M. Ry. v. Buford, 106 Ala. 303,17 So. 395 (1895), is not apt authority, for the overflow of surface water on the plaintiff's property in that case was occasioned by a "lawfully erected" structure that was not itself "necessarily injurious, or . . . an invasion of the rights of another."
We therefore conclude that the trial court erred in applying the two-year residual statute of limitations to Cove's first, second, and third claims.[5] As to these claims, it does not *Page 477 
appear beyond doubt that Cove can prove no set of facts that would entitle it to relief, and we must therefore reverse the trial court's judgment to that extent.
However, we conclude that the trial court's dismissal of Cove's fourth and fifth claims, i.e., those alleging inverse condemnation and conspiracy to deprive Cove of its constitutional rights, was correct. Claims such as that stated in the fifth count of Cove's complaint, which allege that a private party acted in concert with the state to deprive another of his or her constitutional or federal statutory rights, are actionable under 42 U.S.C. § 1983, and claims under that statute subsume direct constitutional claims.NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990); Jett v.Dallas Indep. Sch. Dist., 491 U.S. 701, 734-35, 109 S.Ct. 2702,2722, 105 L.Ed.2d 598, 626 (1989) (holding that Congress intended 42 U.S.C. § 1983 to be the only federal damages remedy for the violation of federal constitutional and statutory rights). However, 42 U.S.C. § 1983 claims based upon acts or omissions occurring in Alabama must be brought within two years of their accrual. E.g., Gorman v. Wood, 663 So.2d 921,922 (Ala. 1995) (citing, among other cases, Owens v. Okure,488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)). Thus, Cove's federal civil rights claim is time-barred and was properly dismissed.
Moreover, with respect to Cove's fourth claim, the Alabama Supreme Court has held that an action for inverse condemnation will not lie when the defendant does not have the right or power of condemnation. See Ex parte Carter,395 So.2d 65, 67 (Ala. 1980). Because Cove has not alleged or shown that Trent has any power to condemn its riparian rights or the submerged lands adjacent to its property, we conclude that the trial court correctly dismissed this claim.
Based upon the foregoing facts and authorities, we affirm the judgment of the trial court to the extent that it dismissed the fourth and fifth counts of Cove's complaint. In all other respects, we reverse the judgment, and we remand the cause for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] We note that prevailing parties in actions brought pursuant to42 U.S.C. § 1983 are generally entitled to recover their attorney fees. See 42 U.S.C. § 1988.
[2] Cove's notice of appeal states as the basis for our jurisdiction that the amount sought is $50, 000 or less and that judgment was entered for the defendant. Based upon the totality of the language employed in the complaint, and Cove's affirmation that the amount in controversy does not exceed $50,000, it appears that we have appellate jurisdiction to hear Cove's damage claims, and we therefore proceed to address the propriety of the judgment as to each of Cove's claims. See Kirkv. Griffin, 667 So.2d 1378, 1380 (Ala.Civ.App. 1995) (finding jurisdiction based upon statement of amount in controversy in notice of appeal); see also Raines v. Browning-Ferris Indus. ofAlabama, Inc., 638 So.2d 1334, 1338 (Ala.Civ.App. 1993) (general rule of appellate jurisdiction is that the court which assumes jurisdiction over one aspect of an appeal should assume jurisdiction over all the issues raised therein).
[3] We note that Terry Cove is a navigable waterway. See Johnsonv. Bryant, 350 So.2d 433, 434 (Ala. 1977) (applying statute concerning authorized uses of "riparian lands upon navigable waters" in case involving Terry Cove riparian owners).
[4] Although the federal district court in Beaunit Corp. v.Alabama Power Co., 370 F. Supp. 1044 (N.D.Ala. 1973), noted in dicta that the predecessor of § 6-2-38(l) "ha[d] been construed by the Supreme Court of Alabama to apply to actions brought for interference with riparian rights," it cited only Parsons for this assertion, which we have shown to be inapposite; moreover, the Beaunit court's use of the residual injury statute of limitations was made solely in the context of "appropriating" an analogous state statute of limitations to a claim the plaintiff was seeking to raise in that case under the Federal Power Act, 16 U.S.C. § 803(c).
[5] Because we conclude that the 10-year limitations period applicable to "[a]ctions for the recovery of lands, tenements or hereditaments, or the possession thereof" applies to Cove's claims, we need not resolve whether the actions of Trent will support an action for trespass to real or personal property, to which a six-year statute of limitations applies. But see Millerv. Mendenhall, 43 Minn. 95, 44 N.W. 1141 (1890) ("if a stranger makes a filling or an obstruction in the waters in front of his land, the owner of the adjacent upland may enjoin its continuance, or recover in trespass, if not in ejectment"),cited with approval in Turner v. City of Mobile, 135 Ala. 73,129, 33 So. 132, 148-49 (1902); Hamlin v. Pairpoint Mfg. Co.,141 Mass. 51, 57, 6 N.E. 531, 533 (1886) (statute analogous to Ala. Code 1975, § 33-7-50, gave plaintiffs "a possessory title for the purpose of building wharves, sufficient to enable them to maintain trespass [action] if their rights are invaded");O'Neal v. Rollinson, 212 N.C. 83, 192 S.E. 688 (1937) (holding that wharf or dock encroaching upon plaintiffs' waterfront constituted continuous trespass to plaintiffs' riparian rights).