The plaintiff, Cove Properties, Inc. ("Cove"), appeals from a summary judgment entered by the Baldwin County Circuit Court in favor of the defendant, Walter Trent Marina, Inc. ("Trent"), on Cove's claims alleging that Trent had encroached upon its riparian rights. We affirm in part, reverse in part, and remand.
This is the second time this case has been before this court. In Cove Properties, Inc. v. Walter Trent Marina, Inc.,702 So.2d 472 (Ala.Civ.App. 1997) ("Cove I"), we summarized much of the procedural history of the case:
 "Cove filed its complaint on October 17, 1996, alleging that it and Trent are adjoining landowners of property fronting Terry Cove in Bay Ornocor, a body of water located in Orange Beach, Alabama. Cove further alleged that on July 2, 1993, it became aware that Trent had erected a pier that crossed a line extending into the water of Terry Cove from the parties' land boundary. Cove's complaint contains five counts, labeled `causes of action': (1) a request for a declaration that Cove `has paramount property rights in and to all that portion of Terry Cove lying westwardly of the projection of the [parties'] boundary line'; (2) a claim for an unspecified amount of damages; (3) a request for injunctive relief; (4) a claim for an unspecified amount of `just compensation,' on the basis that Trent has engaged *Page 324 
with the state in joint action that has effected an unlawful taking of its property rights; and (5) a claim under 42 U.S.C. § 1983 for an unspecified amount of damages and for attorney fees based upon alleged action by Trent `in active concert with the State of Alabama' in violation of the United States Constitution.
 "Trent moved, pursuant to Rule 12(b)(6), Ala.R.Civ.P., to dismiss Cove's complaint, contending, among other things, that the claims therein were barred by Alabama's two-year statute of limitations governing injuries to the person or rights of another not otherwise specified (i.e., § 6-2-38(l), Ala. Code 1975). The trial court heard oral argument and received written memoranda directed to the limitations issue, and subsequently entered a judgment dismissing Cove's complaint on the basis that `[t]his action is barred by the two-year statute of limitations.'"
Cove I, 702 So.2d at 473 (footnotes omitted). This court affirmed the dismissal as to Cove's fourth and fifth causes of action, but reversed and remanded as to its first three causes of action, holding that the trial court had erred in determining that § 6-2-38(l), Ala. Code 1975, the two-year residual personal-injury statute of limitations, applied to Cove's first three causes of action. 702 So.2d at 476-77.
After the case was remanded, Trent moved for a summary judgment on Cove's remaining claims, contending that "any encroachment of [Trent's] pier onto the extended boundary lines of [Cove's] occurred in navigable waters" and that its encroachment could not have violated Cove's rights therein because, it said, "[Cove] does not own that property inasmuch as it is the property of the State of Alabama." Its motion was supported by a copy of an amendment to its lease from the Alabama Department of Conservation and Natural Resources, a copy of an agreement pertaining to the parties' land boundary line, and various maps of the Trent property. Cove filed a response in opposition to Trent's motion and requested that a partial summary judgment be entered in its favor on the issue of Trent's liability. Its motion was supported by an affidavit of its former president, Dennis W. Bikun, and excerpts from the transcript of the deposition of the president and principal owner of Trent; Cove later submitted letters addressed to Trent by officials of the United States Army Corps of Engineers and the Alabama State Docks Department.
On June 17, 1998, the trial court entered an order denying Cove's motion for a partial summary judgment and granting Trent's summary-judgment motion, declaring that it was denying all relief sought by Cove. Cove's post-judgment motion, filed pursuant to Rule 59, Ala.R.Civ.P., was denied by the trial court, and Cove appealed to the Alabama Supreme Court. Cove's appeal was then transferred to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed:
 "`The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. *Page 325 Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala. 1980).'"
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quotingSchoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala. 1985)). In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132
(Ala. 1993). No presumption of correctness attaches to the trial court's ruling on a summary-judgment motion, and our review is de novo. Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023,1025 (Ala.Civ.App. 1993) (citing Gossett v. Twin County CableT.V., Inc., 594 So.2d 635 (Ala. 1992)).
The parties' submissions in connection with the summary-judgment motions do not establish all of the boundaries of their lots bordering Terry Cove; however, the record reveals that the two tracts lie on the north shore of Terry Cove, and that Cove's tract is a comparatively narrow strip extending from the shoreline of Terry Cove inland (i.e., to the north) and bordering Trent's tract on the west. Just inside the border between the two tracts, the shore of Terry Cove, as one looks from east to west, turns sharply to the north into Cove's tract and forms an indentation, or basin, inside the tract. Thus, while the straight-line distance from the east boundary line of Cove's tract to the west property line is approximately 110 feet, the total frontage of Cove's tract along Terry Cove is somewhat greater. A copy of a map showing the general shape of Cove's tract is attached as Exhibit A to this opinion.
The parties reached an agreement concerning their land boundaries on April 12, 1993; thereafter, Cove commissioned Rowe Surveying and Engineering to perform a survey of Trent's 350-foot-long pier that lay alongside the parties' agreed land border (the "Rowe survey"). A detail of the Rowe survey revealed that the northern, or shore-based, end of Trent's pier encroached upon Cove's land above the high-water mark by approximately half a foot; however, when the land border line between the properties was projected into Terry Cove, the encroachment increased to as much as 7.1 feet at the southern tip of the pier and its attached stalls. Thus, the encroachment amounted to approximately seven percent of the Cove tract's 110-foot straight-line water frontage on Terry Cove. A copy of the Rowe survey is attached as Exhibit B to this opinion.
On February 23, 1994, Trent entered into a lease with the Commissioner of the Alabama Department of Conservation and Natural Resources whereby the Commissioner, on behalf of the State, purported to lease Trent a triangular sliver of submerged land underneath Trent's pier extending from a point 150 feet from the shoreline to the end of the pier. We note that neither party has contested the capacity of the Commissioner to lease these submerged lands. The lease contained recitals stating that the westward encroachment of the pier across the projected property line began at 150 feet from the shore, and that the depth of the waters underneath the pier at that point was approximately 6.5 feet, which was stated to be "adequate for navigation in Terry Cove." However, there is no reference in the lease to the land underneath the one-half-foot shore encroachment shown in the detail of the Rowe survey, nor to any submerged lands lying less than 150 feet from the shore.
At this point, we may draw distinctions between Cove's property rights in three different categories: (1) its rights to the land above high-water mark; (2) its riparian *Page 326 
rights (more properly designated as its "littoral" rights; seeWehby v. Turpin, 710 So.2d 1243, 1246 n. 2 (Ala. 1998)) between the high-water mark and that point in Terry Cove where the water becomes navigable, that is, the "point of navigability"; and (3) from the point of navigability to the point corresponding to the south end of Trent's pier.
With respect to the first of these categories, Cove has the same property rights as any landowner to be free from a continuing trespass on its land. Trespass has been defined as "any entry on the land of another without express or implied authority," Central Parking Sys. v. Skeen, 707 So.2d 226, 228
(Ala. 1997) (quoting Foust v. Kinney, 202 Ala. 392, 393,80 So. 474, 475 (1918)), and a structure maintained on another's property is a continuing trespass. Alabama Power Co. v. Gielle, 373 So.2d 851,854 (Ala.Civ.App.), cert. denied, 378 So.2d 1100 (Ala. 1979). The sole evidence in the record concerning this aspect of Cove's trespass and declaratory-judgment claims is the Rowe survey, which shows Trent's pier to have encroached on Cove's land. While Trent contends that this land encroachment was not raised by Cove until this appeal, the record shows that Cove's counsel questioned Trent's president and principal owner about the land encroachment at his deposition, and Cove argued this point in a supplemental submission in opposition to Trent's summary-judgment motion. We therefore conclude that Trent failed to make a prima facie showing that there was no genuine issue of fact as to whether its pier constituted a continuing trespass to Cove's property above the high-water mark, and to that extent the judgment of the trial court is due to be reversed and the cause remanded for further proceedings.
We now turn to Cove's riparian property rights below the high-water mark, which constitutes the border between the land it owns and the submerged "flats" owned by the State of Alabama in trust for the public. See generally Mobile Transp. Co. v. City ofMobile, 128 Ala. 335, 348-49, 30 So. 645, 647 (1900) (outlining common-law rule as to tidewater shores — that the state holds title to land below high water-mark), aff'd, 187 U.S. 479 (1903),overruled on other grounds by Mobile Dry Docks Co. v. City ofMobile, 146 Ala. 198, 40 So. 205 (1906). As to this land, Trent emphasizes, and Cove concedes, that Cove does not have title. However, Cove asserts that it has certain riparian rights arising from its ownership of the upland.
We agree. As we noted in Cove I, a riparian proprietor "is entitled to . . . the right to make a landing, wharf or pier for his own use, or for the use of the public, subject to such general rules and regulations as the legislature may impose." 702 So.2d at 474 (quoting Mobile Dry Docks, 146 Ala. at 204, 40 So. at 207
(1906)). We also noted that the legislature had confirmed the rights of riparian owners to "install in front of their respective riparian lands wharves, docks, warehouses, sheds, tipples, chutes, elevators, conveyors and the like for receiving, discharging, storing, protecting, transferring, loading and unloading freight and commodities of commerce to and from vessels and carriers." Section 33-7-50, Ala. Code 1975. We referred to these rights inCove I as "corporeal hereditaments" inuring to Cove's riparian tract. 702 So.2d at 476.
However, these rights to "wharf out" from one's riparian property are not unfettered. For example, while there are no Alabama cases explicitly adopting the principle, the majority common-law rule (which, in this area of riparian property *Page 327 
law, is binding on this court; see Wehby, 710 So.2d at 1249, and §1-3-1, Ala. Code 1975)), is that the right to wharf out is derived from a riparian landowner's right of access to navigable or deep water, and as soon as that landowner reaches the point of navigability, the purpose of the right is fulfilled and his or her access rights cease.E.g., Port Clinton Associates v. Board of Selectmen, 217 Conn. 588, 598
n. 13, 587 A.2d 126, 132 n. 13 (1991); State ex rel. Head v.Slotness, 289 Minn. 485, 487, 185 N.W.2d 530, 532 (1971);Rogers v. South Slope Holding Corp., 172 Misc.2d 33, 38-39,656 N.Y.S.2d 169, 174 (Sup.Ct. 1997), modified on other grounds andaff'd, 255 A.D.2d 898, 680 N.Y.S.2d 772 (1998); Hoff v. PeninsulaDrainage Dist. No. 2, 172 Or. 630, 638-39, 143 P.2d 471, 474
(1943); see generally 65 C.J.S. Navigable Waters § 73b (1966).[1]
Cove contends that § 33-7-50, Ala. Code 1975, discussed above, expands its common-law riparian rights so as to give it exclusive riparian wharfage rights beyond the point of navigability. However, the language of § 33-7-50 merely permits the installation of wharves and other related commercial structures in front of riparian land.[2] We must presume that the legislature, in enacting § 33-7-50, did not "intend to make any alteration in the law beyond what it declare[d] either expressly or by unmistakable implication." Ex parte AlabamaAlcoholic Beverage Control Bd., 683 So.2d 952, 956 (Ala. 1996). In contrast, the authorities relied upon by Cove to support its contention pertain to the interpretation of statutes, such as that formerly in force in Maryland, which explicitly conferred an "exclusive right" to make improvements into the waters in front of one's riparian land (see, e.g., Owen v. Hubbard, 260 Md. 146, 155,271 A.2d 672, 677-78 (1970)). Thus, we cannot interpret § 33-7-50
to afford Cove the rights it has claimed beyond the point of navigability in Terry Cove.
That is not to say, however, that there is no genuine issue of material fact with respect to the waters in front of Cove's tract. As we have noted, the evidence before the trial court was that Trent's pier encroaches upon Cove's land, and that the pier enters the water of Terry Cove at an angle that increases the amount of encroachment across the projected property line along the entire length of the pier, not just the outermost 150 feet. As to waters before the point of navigability, one's right to wharf out is limited to the area "within the projected boundaries of the waterfront property." Thomas v. Sanders,65 Ohio App.2d 5, 16, 413 N.E.2d 1224, 1232 (1979); accord, Ladies'Seamen's Friend Society v. Halstead, 58 Conn. 144, 19 A. 658
(1889); 65 C.J.S. Navigable Waters § 77b (1966). Therefore, regardless of whether the "point of navigability" is assumed to be 2.5 feet (as Trent's president and principal owner testified), 5.3 feet (the shallower of the two figures in Trent's lease), 6.5 feet (the deeper of the two figures in Trent's lease), or the point in Terry Cove where Cove's property becomes "reasonably available at *Page 328 
any ordinary stage of water for any kind of navigation for which the stream is used, and for which it is adapted," see In reApplication of Union Depot Street Ry. Transfer Co., 31 Minn. 297,301-02, 17 N.W. 626, 628-29 (1883), the specific point at which Cove's wharfage rights terminate has not yet been settled.
Trent contends that Cove's claim to riparian rights is not "ripe" because it has not yet attempted to wharf out from its tract. We cannot agree that Cove is not entitled to declaratory and injunctive relief with respect to its riparian rights until it elects to build a pier. "A riparian owner is entitled . . . to have the extent of his enjoyment upon the line of navigability of the watercourse determined and marked, and his boundaries defined."Cordovana v. Vipond, 198 Va. 353, 357, 94 S.E.2d 295, 298 (1956);accord, Swanenburg v. Bland, 240 Va. 408, 414, 397 S.E.2d 859,862 (1990) ("If the issue is raised in the pleadings, riparian adversaries are entitled to have the extent of their enjoyment of riparian rights upon the line of navigability determined and marked, the proper share of the flats set apart, and the boundaries defined"); Causey v. Gray, 250 Md. 380, 390,243 A.2d 575, 583 (1968) (adjacent riparians entitled to declaration of rights to land accretion). As we noted on the first appeal of this case, "[t]he mere non-user of a water power by a riparian owner will not operate to impair his title, or confer any right thereto on another." Cove I, 702 So.2d at 476 (quoting Ulbrichtv. Eufaula Water Co., 86 Ala. 587, 592-93, 6 So. 78, 80 (1889)). The extent of Cove's riparian rights can, and should, be declared by the trial court on remand, irrespective of Cove's current election not to erect a wharf from its tract into Terry Cove.
Finally, we are not persuaded by Trent's contention, raised for the first time on this second appeal, that the State is an indispensable party to this action. Under the common law, riparian rights such as the right to wharf out inure to the benefit of an owner of a riparian tract regardless of whether the riparian owner or the State owns the soil under the water. This principle was discussed at length in Mobile Dry Docks,146 Ala. at 204-05, 40 So. at 205:
 "`Riparian rights are not common to the citizens at large, but exist as incidents to the right of the soil itself adjacent to the water. In such ownership they have their origin. They may and do exist, [though] the fee in the bed of the river or lake be in the state.' . . .
 ". . . `Riparian rights proper are held to rest upon [the] title to the bank of the water, and not upon [the] title to the soil under the water; riparian rights proper being the same, whether the riparian owner owns the soil under the water or not.'"
(Quoting McCarthy v. Murphy, 119 Wis. 159, 161-62, 96 N.W. 531,532 (1903), and Diedrich v. Northwestern Union Ry. Co.,42 Wis. 248, 262 (1877). (Emphasis added in Mobile Dry Docks.) Because the sole controversy involved in this case concerns the competing riparian rights of two owners of adjacent tracts of riparian land, we conclude that the State was not an indispensable party to the litigation between Cove and Trent. We thus do not reach Cove's contentions that Trent has not timely raised this issue and that, in any event, the proper remedy for the State's non-joinder would be to direct that the State be made a party on remand.
Based upon the foregoing facts and authorities, we affirm that portion of the summary judgment pertaining to the parties' rights beyond the point of navigability, and we reverse the summary judgment as it applies to the parties' property rights above high-water mark and the parties' riparian rights up to the point of navigability *Page 329 
in Terry Cove. The case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates, Monroe, Crawley, and Thompson, JJ., concur.
 EXHIBIT A
[EDITORS' NOTE: THIS EXHIBIT IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 330 
 EXHIBIT B
[EDITORS' NOTE: THIS EXHIBIT IS ELECTRONICALLY NON-TRANSFERRABLE.]
[1] We should not be construed as holding that, in all cases, a riparian property right may extend only to the point of navigability; the sole riparian right at issue in this appeal is the right of access to navigable water.
[2] Although Cove I noted that § 33-7-50 and the statute interpreted by the Supreme Judicial Court of Massachusetts inHamlin v. Pairpoint Mfg. Co., 141 Mass. 51, 6 N.E. 531 (1886), were "analogous," the analogy is not exact; the statute considered in Hamlin empowered riparian owners on a particular river to build "to the channel of [the] river, if [they thought] proper" (141 Mass. at 57, 6 N.E. at 533), a specific geographical reference not found in § 33-7-50. *Page 331